**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LINDA GLENWRIGHT,** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 3:16-0926** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **CARBONDALE NURSING HOME, INC. d/b/a Carbondale Nursing Home and Rehabilitation Center and GENESIS ELDERCARE NETWORK SERVICES, INC.,** | : | |
| | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

Currently before the court is a motion to dismiss or, in the alternative, compel arbitration, (Doc. 11), filed by the defendants. The defendants' motion was filed in response to the plaintiff's ("Glenwright's") amended complaint, (Doc. 16). Their motion seeks dismissal of Glenwright's claims or, in the alternative, enforcement of an arbitration agreement between Glenwright and defendant Carbondale Nursing Home, Inc. ("Carbondale"). Based on the foregoing, the defendants' motion is **GRANTED IN PART** and **DENIED IN PART**. Glenwright must arbitrate her claims against Carbondale. The claims against defendant Genesis Eldercare Network Services, Inc. ("Genesis") may proceed and Genesis will be allowed to file a renewed motion at the close of discovery.

## I.   FACTUAL BACKGROUND

Glenwright was employed by Carbondale, a healthcare facility, for approximately six (6) years as a registered nurse and supervisor. Genesis is the managing entity of Carbondale. At some point before or during her employment, Glenwright signed an arbitration agreement with Carbondale. (Doc. 24-9). Glenwright does not dispute that she signed this agreement. (Doc. 24, ¶3; *see also* Doc. 24-9, at 3). The agreement provides as follows:

> [A]ny . . . dispute arising out of the [employee's] employment or the termination of . . . employment (including, but not limited to claims of unlawful termination based on race, sex, age, national origin, disability, breach of contract or any other bias prohibited by law) [will be submitted] . . . exclusively to binding arbitration under the Federal Arbitration Act.

(Doc. 24-9, at 1). The agreement also states that the employee's dispute must be initiated by the employee delivering a written request for arbitration within one year from the date of the alleged incident. (*Id.*). If the employee does not submit a timely request, the agreement states the employee's "right to raise any claims arising out of the [employee's] termination" will have been waived. (*Id.*). In addition, in two instances, the agreement provides that the employee will be responsible for his or her own legal costs and half the cost of arbitration. (Doc. 24-9, at 2–3).

Glenwright's employment was terminated, effective May 20, 2014. Leading up to her termination, on December 10, 2012, Glenwright suffered an injury at work. She filed a workers' compensation claim for this injury in

2

February of 2013 and was unable to work until August of 2013. Glenwright's work injury exacerbated her arthritis and degenerative knee condition. When she returned to work she required accommodations for these disabilities, including adjustments to her duties and work schedule. She was granted her requested accommodations from August of 2013 until her termination. After seeking accommodations, Glenwright alleged that she was assigned to "menial and physically challenging job duties that she had rarely been required to perform in the past." (Doc. 16, at ¶20). She described this as "unwarranted discipline" designed to "force her out of the workplace." (*Id.* ¶21).

On May 14, 2014, Glenwright was informed that her workplace could no longer accommodate her injuries. She was notified that her employment would be terminated, effective May 20, 2014, if she did not apply for a leave of absence. Glenwright notified her workplace, verbally and in writing, that she would not request a leave of absence because she did not need one and requested the continuance of her existing accommodations. No further accommodations were provided.

## II.    PROCEDURAL BACKGROUND

On October 9, 2014, Glenwright filed a charge with the Equal Opportunity Employment Commission ("EEOC") asserting claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12101 *et seq.* and she dual-filed claims under the Pennsylvania Human Relations Act ("PHRA"),

3

43 PA. STAT. §951 *et seq.* with the Pennsylvania Human Relations Commissions ("PHRC"). (Doc. 24-8). These charges listed Carbondale as the respondent, but did not list Genesis explicitly. On May 18, 2016, Glenwright filed a complaint in this court. (Doc. 1). At that time, Glenwright was still in the process of exhausting her administrative remedies with respect to her ADA and PHRA claims; thus, her complaint did not contain those claims. Within her complaint, Glenwright notified the court that she intended to file an amended complaint once she completed the administrative process. (Doc. 1, at ¶2 n. 1).

On August 11, 2016, Glenwright filed an unopposed motion to amend/correct her complaint. (Doc. 9). On August 12, 2016, the court granted the motion, (Doc. 10), and the amended complaint was docketed that same day.[1] (Doc. 16). Her amended complaint included claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §701 *et seq.* (Counts I–II), claims under the Family Medical Leave Act of 1993, 29 U.S.C. §2601 *et seq.* (Counts

---

[1] In addition to adding her claims under the ADA and PHRA, Glenwright's amended complaint also changed the name of one defendant. Her original complaint listed the defendants as Carbondale and an entity named Genesis Healthcare, Inc. (*See* Doc. 1). The amended complaint kept Carbondale as a defendant and changed Genesis Healthcare, Inc. to Genesis Eldercare Network Services, Inc., the current co-defendant. (*See* Doc. 16). This change was likely in response to the Rule 7.1 disclosure statement filed by Genesis Healthcare, Inc., (Doc. 6), identifying Genesis Eldercare Network Services, Inc. as the corporate parent of Genesis Healthcare, Incorporated. Carbondale has no corporate parent. (*See* Doc. 5).

4

III–IV), a wrongful discharge claim under Pennsylvania law (Count V), claims under the ADA (Counts VI–VIII), and claims under the PHRA (Counts IX–XI).

On August 16, 2016, the defendants filed the current motion with a supporting brief. (Doc. 11, Doc. 12). In addition, the defendants filed a statement of facts with the underlying arbitration agreement attached as an exhibit. (Doc. 13). The defendants' motion seeks dismissal based on the limitations period provided for in the arbitration agreement. In the alternative, the defendants request that this court compel arbitration. As another alternative argument, the defendants argue that this court lacks subject-matter jurisdiction over the claims against Genesis because Glenwright failed to exhaust her administrative remedies with respect to Genesis. On September 27, 2016, after requesting and receiving two extensions of time, Glenwright filed her brief in opposition, contesting the validity of the agreement, among other arguments. (Doc. 23). She also filed a counter statement of facts with several exhibits attached. (Doc. 24). On October 17, 2016, after requesting and receiving an extension of time, the defendants filed a reply brief. (Doc. 27).

On September 19, 2016, after the defendants' motion had been filed, the court held a telephone case management conference with the parties. (*See* Doc. 18). Immediately thereafter, the court issued a scheduling order setting various case management deadlines, including a February 13, 2017 deadline for fact discovery. (Doc. 20). No supplemental briefs or exhibits have been provided to the court during the course of this discovery. On February 8, 2017,

5

the plaintiff filed an unopposed motion seeking to extend the original deadlines, which the court granted. (*See* Docs. 28–29). Thus, to date, the parties are still in the process of discovery.

## III.   LEGAL STANDARDS

### A.   Motion to Compel Arbitration

In *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013), the Third Circuit Court of Appeals clarified the appropriate standard to be applied to a motion to compel arbitration that is filed prior to the benefit of discovery. The court held that where the affirmative defense of arbitrability is apparent on the face of the complaint or those documents relied upon in the complaint the standard under Federal Rule of Civil Procedure 12(b)(6) should be applied. *Id.* at 773–74. In those cases, the Federal Arbitration Act ("FAA"), 9 U.S.C. §1 *et seq.*, would favor speedy resolution of the motion without the delay of discovery. *Id.* at 773.

"[A] more deliberate pace is required" when either (1) the complaint and documents referenced therein do not establish with "requisite clarity" that the parties agreed to arbitrate or (2) "the opposing party has come forth with reliable evidence that is more than a 'naked assertion . . . that it did not intend to be bound,' even though on the face of the pleadings it appears that it did." *Id.* at 774 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474, 479 (E.D. Pa. 2011)* and *Par-Knit Mills, Inc. v.*

*Stockbridge Fabrics Co., Ltd*, 636 F.2d 51, 55 (3d Cir. 1980)). In those instances the motion should be resolved according to the standard provided by Federal Rule of Civil Procedure 56. *Id.*

When the issue of arbitrability is not apparent on the face of the complaint, normally, "the motion to compel arbitration must be denied pending further development of the factual record." *Id.* "[A] restricted inquiry into the factual issues will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate, and the non-movant must be given the opportunity to conduct limited discovery." *Id.* (internal citations and quotations omitted). After this, the appropriate standard to be applied is the standard provided by Rule 56.

Here, the issue of arbitrability is not apparent on the face of Glenwright's amended complaint or any documents cited within or attached to the amended complaint. The defendants' arguments are entirely premised on the arbitration agreement attached to the motion to compel arbitration. Glenwright contests the validity of this agreement. Normally, a plaintiff would be "entitled to discovery on the question of arbitrability before [this] court entertains further briefing" on the issue. *Guidotti*, 716 F.3d at 776 (quoting *Somerset*, 832 F. Supp. 2d at 482). However, at this stage of the litigation, the parties have already engaged in several months of discovery. Despite this, Glenwright has not submitted or attempted to submit any supplemental briefing or exhibits to further her arguments with respect to the issue of arbitrability. Denying the

defendants' motion in its entirety at this time solely to provide additional time for discovery would be inefficient, especially where the allowance of discovery to engage in the arbitrability analysis is, typically, quite limited.

Further, on February 8, 2017, Glenwright requested more time for discovery generally. (Doc. 28). The court granted her request. (Doc. 29). The court will not further extend the discovery deadline. Instead, the court will rule on the defendants' motion using the summary judgment standard set forth in Federal Rule of Civil Procedure 56 in light of the briefing, exhibits, and statements of facts submitted by all parties.

### B.    Rule 56 Summary Judgment Standard

Rule 56 allows a court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A factual dispute is genuine if a reasonable jury could find for the nonmovant, and is material if it will affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). In support of their argument, the movant and nonmovant must point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials" or show that the other party's evidence does "not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1)(A), (B).

The movant can also meet the Rule 56 standard by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003). The nonmoving party must then "do more than simply show that there is some metaphysical doubt as to material facts." *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). In assessing the parties' arguments, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Guidotti*, 716 F.3d at 772 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

### C.    Administration Exhaustion—Rule 12(b)(1)

In addition to seeking dismissal or arbitration based on the arbitration agreement, the defendants' motion challenges this court's subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The defendants allege that Glenwright failed to exhaust her administrative remedies with respect to Genesis. "A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." *Vieth*

*v. Pennsylvania*, 188 F. Supp. 2d 532, 537 (M.D. Pa. 2002). The failure to exhaust administrative remedies is a jurisdictional issue and the appropriate device to raise this issue is a motion to dismiss under Rule 12(b)(1). *See Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271 (3d Cir. 2014). A Rule 12(b)(1) dismissal is not a judgment on the merits, but only a determination that the court lacks the authority to hear the case. *Swope v. Central York Sch. Dist.*, 796 F. Supp. 2d 592, 599 (M.D. Pa. 2011). Because the district court is a court of limited jurisdiction, the burden of establishing jurisdiction always rests upon the party asserting it. *See Kokkonen v. Guardian Life. Ins. Co. of America*, 511 U.S. 375, 377 (1994).

An attack on the court's jurisdiction may be either "facial" or "factual" and the "distinction determines how the pleading must be reviewed." *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack tests the sufficiency of the pleadings, while a factual attack challenges whether a plaintiff's claims fail to comport factually with jurisdictional prerequisites. *Id.* at 358; *see also S.D. v. Haddon Heights Bd. of Educ.*, 833 F.3d 389, 394 n. 5 (3d Cir. 2016). If the defendant brings a factual attack, the district court may look outside the pleadings to ascertain facts needed to determine whether jurisdiction exists. *Id.*

Reviewing a facial attack, a district court must accept the allegations stated in a plaintiff's complaint and review "only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the

10

jurisdiction of the district court." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (internal quotation marks omitted). "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.,* construing the alleged facts in favor of the nonmoving party. This is in marked contrast to the standard of review applicable to a factual attack, in which a court may weigh and 'consider evidence outside the pleadings.'" *Aichele*, 757 F.3d at 358 (quoting *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)) (internal citation omitted).

The court construes the defendants' motion as a factual attack of jurisdiction. An attack on jurisdiction based on a failure to exhaust remedies that is filed prior to answering the complaint is usually, "by definition, a facial attack" on the pleadings unless the defendant has offered factual averments in support of its motion. *Haddon Heights*, 833 F.3d at 394 n. 5. Here, all parties have provided statements of facts inclusive of various factual averments. In addition, all parties have provided the court with an abundance of exhibits to support their arguments. The court will look to these exhibits in making its determination.

## IV.   THE ARBITRATION DISPUTE

The parties dispute the validity of the arbitration agreement signed by Glenwright. In particular, Glenwright argues that the agreement is unconscionable under Pennsylvania law and that Carbondale waived its rights under the agreement. Also at issue is whether Genesis may compel arbitration, assuming the agreement is valid. The court finds that the arbitration agreement is valid when the fee provisions have been severed from the agreement. The court also finds that the decision of whether Carbondale has waived the provision in the agreement requiring a written request for arbitration within one year of her termination is a question for the arbitrator and not this court. Finally, the court cannot determine at this stage whether Genesis should be deemed a party to the agreement as noted below and will allow Genesis to file a renewed motion, if appropriate, after the completion of discovery.

 "A party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263–64 (3d Cir. 2003); *see also* 9 U.S.C. §§3, 4. Judicial review over a dispute regarding arbitration is, initially, limited to a two-part inquiry. *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014). First, the court must determine whether "a valid agreement to arbitrate exists," and, second, whether "the particular dispute falls within the scope of the agreement." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160

12

(3d Cir. 2009); *see also id.* Here, the parties primary dispute falls within the first inquiry. Glenwright does not dispute that her employment related claims are included in the scope of the arbitration agreement.

The initial question of whether the parties validly agreed to arbitrate is presumed to be a question for the court unless the parties clearly and unmistakably indicate otherwise. *Guidotti,* 716 F.3d at 773. Generally, there is a "liberal federal policy favoring arbitration" and a "fundamental principle that arbitration is a matter of contract." *AT&T Mobility,* 131 S. Ct. at 1745 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983) and *Rent-A-Center, West, Inc. v. Jackson,* 561 U.S. 63, 67 (2010)). However, "before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be express, unequivocal agreement to that effect." *Guidotti,* 716 F.3d at 773 (quoting *Par-Knit Mills,* 636 F.2d at 54). Thus, the presumption in favor of arbitration is only applied once the court has determined that the parties "have consented to and are bound by the arbitration [agreement]." *Griswold v. Coventry First LLC,* 762 F.3d 264, 271 (3d Cir. 2014). Their agreement may be declared unenforceable by the court "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2; *see also AT&T Mobility, LLC v. Concepcion,* 131 S. Ct. 1740,1746 (2011).


### A.   Unconscionability

Glenwright argues that the arbitration agreement is invalid because it is unconscionable, particularly because it requires the employee to bear his or her own legal fees and costs and half the cost of arbitration.[2] The arbitration agreement states that Carbondale and the employee "shall each bear respective costs for legal representation at any such arbitration." (Doc. 24-9, at 2). It further states, "The parties, if any, shall share the cost of the arbitrator and court reporter, equally." (*Id.*). Later, in the Acknowledgment signed by Glenwright, the agreement again states, "I agree that I will be entitled to legal representation at my own cost, during arbitration." (*Id.* at 3). The defendants argue that the agreement is not unconscionable under Pennsylvania law and, in the alternative, that the fee provisions can be severed. The court finds that the fee provisions are unconscionable, but that this does not render the entire agreement unconscionable. The unconscionable provision can be severed to save the parties' agreement to arbitrate.

---

[2] Glenwright has not argued, nor has she presented any evidence to show, that the fee provisions are prohibitive of her ability to "fully and effectively" vindicate her rights. *See Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 214 (3d Cir. 2003). A litigant arguing the inability to vindicate his or her rights based on a fee provision in the agreement bears the burden of showing the likelihood of high costs and must establish, beyond speculation, the existence of and inability to pay these costs. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000); *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 268–69 (3d Cir. 2003); *Spinetti*, 324 F.3d at 216–17. Here, Glenwright argues that the fee provisions are unconscionable based on the possible limitation of remedies available to her and, thus, the agreement as a whole is unconscionable and cannot be enforced.

A court should "generally apply state contract principles to determine whether an arbitration agreement is unconscionable." *Quillon v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012). In Pennsylvania, an agreement is unconscionable if it is both substantively and procedurally unconscionable. *Id.* (citing *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (2007)). Glenwright's argument for unconscionability of the contract is based on the alleged unconscionability of the fee provisions in the agreement. The court agrees that the provisions are unconscionable, but disagrees that this renders the entire contract unconscionable and, therefore, unenforceable.

"Provisions requiring parties to be responsible for their own expenses, including attorneys' fees, are generally unconscionable because restrictions on attorneys' fees conflict with federal statutes providing fee-shifting as a remedy." *Id.* at 230–231(collecting cases). This generalization is only applicable when the provision requires the litigant to bear legal fees and costs regardless of the outcome of the arbitration and disallows fee-shifting. *See id.* at 231; *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, (3d Cir. 2003) (fee provision substantively unconscionable under Virgin Islands law where the agreement substantially limited the available remedies to plaintiffs)*; Spinetti*, 324 F.3d at 214–15 (addressing a provision that required the litigant to bear costs regardless of the outcome of arbitration). If the agreement is ambiguous with respect to the arbitrator's ability to fashion an appropriate award, this ambiguity must be addressed by the arbitrator in the first instance. *See*

15

*Quillion*, 673 F.3d at 231. In *Quillion*, the Third Circuit found an ambiguity with respect to the employee's ability to obtain fees as a remedy where explicit provisions in the parties' agreement contradicted each other as to the availability or non availability of fees and costs. *Id*.

Here, the arbitration agreement at issue unambiguously provides that the employee will bear his or her own legal costs and half of the costs of arbitration. It states so in two instances. Unlike the agreement in *Quillion*, there is no provision that states that all remedies available in a court of law would be available to Glenwright in arbitration, or some similar provision to that effect. Thus, there is no ambiguity in the language of the agreement and it is clear that Glenwright must bear her respective legal fees and half the costs of arbitration. This is so despite the existence of a fee-shifting remedy available to her in this court. This is clearly unconscionable under *Quillion*. *See* 673 F.3d at 230–31.

Although the court finds that the fee provisions are unconscionable, the court also finds that these provisions are severable. In Pennsylvania, where an essential term in a contract is illegal, the entire contract is unenforceable. *Spinetti*, 324 F.3d at 214 (citing *Deibler v. Chas. H. Elliott Co.*, 81 A.2d 557, 560–61 (Pa. 1951)). In *Spinetti v. Service Corporation International*, the Third Circuit, applying Pennsylvania law, explained that a clause can be stricken from an agreement so long as it does not constitute "an essential part of the agreed upon exchange." *Id*. (quoting RESTATEMENT (SECOND) OF CONTRACTS

§184(1) (1981)). This is true even if there is no specific clause in the agreement allowing for severance of the agreement. *Id.* at 221–22. The *Spinetti* court affirmed the district court's decision to sever unenforceable fee provisions in an employment arbitration agreement. *Id.* The court found that the essence of the agreement was to settle employment disputes, and not the language regarding fees. *Id.* at 214. "[P]rovisions regarding payment of arbitration costs and attorney's fees represent only a part 'of [the] agreement and can be severed without disturbing the primary intent of the parties to arbitrate their disputes.'" *Id.* (quoting the district court) (alteration in original).

In line with *Spinetti*, the court is able to sever the fee provisions in the parties' arbitration agreement without disturbing the intent of the parties to arbitrate their employment-related disputes. Thus, any argument that the unconscionable fee provision renders the entire agreement unconscionable is legally unsound. The court will enforce the agreement without the fee provisions and allow the parties to arbitrate their claims.

Moreover, Glenwright has not argued, nor has she shown, that the agreement is procedurally unconscionable, which this court would be required to find in order to deem the entire agreement unconscionable. "A contract is procedurally unconscionable where 'there is a lack of meaningful choice in the acceptance of the challenged provision[.]'" *Quillion*, 673 F.3d at 235 (quoting *Salley*, 925 A.2d at 119) (alteration in original). "Under Pennsylvania law, a contract is generally considered to be procedurally unconscionable if it is a

17

contract of adhesion." *Id*. However, more than a mere disparity of bargaining power is needed to find procedural unconscionability. *Id*. The court should consider factors including: "the take-it-or-leave-it nature of the standardized form of the document[,] the parties' relative bargaining positions, and the degree of economic compulsion motivating the adhering party[.]" *Id*. at 235–36 (quoting *Salley*, 925 A.2d at 125) (alteration in original) (internal quotation marks omitted).

Glenwright has not offered any arguments indicating that the arbitration agreement as a whole is procedurally unconscionable. Accordingly, the court finds that the agreement as a whole is valid, but will sever the unconscionable fee provisions.

### B.   Waiver

Having found a valid arbitration agreement between Carbondale and Glenwright, the court must next determine whether the agreement has been waived, and, if not, whether the case must be dismissed because Glenwright failed to follow the procedural requirements in the agreement. Glenwright argues that Carbondale "waived its rights under [the] policy," including the one year limitations period, because Carbondale did not notify her of the arbitration agreement at any time during the underlying administrative proceedings. (Doc. 23, at 7). The court finds that whether Carbondale waived the clause requiring written notification of the dispute within a year is an issue

for the arbitrator to decide, not this court. Accordingly, the court will compel arbitration with respect to Carbondale and allow the arbitrator to determine whether or not Glenwright's claims fail because she did not submit a written request for arbitration in time.

"[W]aiver of the right to arbitrate based on litigation conduct remains presumptively an issue for the court to decide." *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 219 (3d Cir. 2007). "Consistent with the strong preference for arbitration in federal courts, waiver [of the right to compel arbitration] is not to be lightly inferred, and waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." *Nino*, 609 F.3d at 208 (quoting *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068–69 (3d Cir. 1995)). "[H]owever, a court may refuse to enforce an arbitration agreement where, for example, the alleged defaulting party has acted inconsistently with the right to arbitrate, and [the court] will not hesitate to hold that the right to arbitrate has been waived where a sufficient showing of prejudice has been made by the party seeking to avoid arbitration." *Id.* (internal quotation marks and citations omitted). The list of factors relevant to this inquiry include the following:

> [1] the timeliness or lack therof of a motion to arbitrate . . .[; 2] the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; [3] whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court

proceedings; [4] the extent of its non-merits motion practice; [5] its assent to the court's pretrial orders; and [6] the extent to which both parties have engaged in discovery.

*Id.* at 208–209 (quoting *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 926–27 (3d Cir. 1992)) (internal citations omitted) (alterations in original). All of the above factors need not be present and the existence of prejudice is the "touchstone for determining whether the right to arbitrate has been waived by litigation conduct." *Id.* at 209 (quoting Ehleiter, 482 F.3d at 219).

Here, Glenwright's sole argument for waiver is premised on the defendants' failure to raise the arbitration agreement during the underlying administrative proceedings. She does not address any litigation conduct in this court as a basis for her waiver argument. The Third Circuit has not directly addressed whether a failure to raise the issue of arbitration in administrative proceedings constitutes a waiver. The Third Circuit has recognized that a defendant is not required to raise every legal defense or argument before the EEOC. *Petruska v. Gannon Univ.*, 462 F.3d 294, 308 (3d Cir. 2006) (citing *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 15 (1st Cir. 2005) (holding that appellee did not waive right to raise arbitration defense in district court by failing to raise it before EEOC)). Several federal courts addressing this issue have come to the conclusion that failure to raise the arbitration agreement in administrative proceedings does not constitute a waiver of the right to compel arbitration. *See, e.g., Volpe v. Jetro Holdings*, No. 08-3521, 2008 WL 4916027, at *6–7 (E.D. Pa. Nov. 14, 2008) (collecting cases); *see also Esaka*

*v. Nanicoke Health Servs.*, Inc., 752 F. Supp. 2d 476, 484 (D. Del. 2010). The court is persuaded by the reasoning in these cases and sees no reason to come to a different conclusion.

Further, in light of the factors provided for waiver, generally, the court cannot conclude that Glenwright will be prejudiced by Carbondale's failure to raise the arbitration issue. The only argument that Glenwright can assert to show possible prejudice is the requirement requiring employees to submit their written request for arbitration within one year from the date of termination or alleged incident in dispute. (Doc. 24-9, at 1). The court is not able to conclude that this procedural requirement has been waived and will leave that issue for the arbitrator.

"'[P]rocedural questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964)) (emphasis in original). Thus, "waiver, delay, or like defenses arising from non-compliance with contractual conditions precedent to arbitration" are presumptively for the arbitrator. *Ehleiter*, 482 F.2d at 219. In comparison, waiver based on active litigation in court implicates the "court's authority to control judicial procedures and to resolve issues . . . arising from *judicial conduct*" and is, presumptively, an issue for the court. *Id.* (emphasis in original).

21

The Third Circuit's reasoning in *Ehleiter* further supports a finding that conduct in the administrative proceeding is not sufficient to find waiver of the right to compel arbitration in this judicial proceeding. It also leads to the conclusion that the waivability of a particular clause requiring a written request for arbitration within a period of time is an issue for the arbitrator to decide and not this court. Accordingly, the court will compel arbitration and enforce Carbondale's agreement with Glenwright to arbitrate all employment related disputes, absent the severed fee provisions. It is for the arbitrator to determine whether Carbondale waived the written notification requirement in the parties' agreement.

### C.    Genesis

The court must next determine if Genesis is covered by the arbitration agreement. While it is clear that Carbondale is a party to the agreement, the parties dispute whether Genesis is a party. (*See* Doc. 23, at 3 n. 1). Genesis is not a signatory to the agreement. (*See* Doc. 24-9 (referencing Carbondale only)). In a footnote, Glenwright asserts that Genesis cannot rely on the agreement because Genesis is not a signatory. (*Id.*). Also in a footnote, the defendants appear to assert that they should be treated as one and the same for purposes of arbitration due to Glenwright's own arguments as provided in her brief; overall, their argument is unclear. (Doc. 27, at 8 n.3). At this stage,

a genuine dispute still exists as to whether Genesis and Glenwright agreed to arbitrate claims and whether Genesis may compel Glenwright to arbitrate.

"[A] court may only compel a party to arbitrate where that party has entered into a written agreement to arbitrate that covers that dispute." *DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001) (quoting *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999)). "[W]hen asked to enforce an arbitration agreement against a non-signatory to an arbitration clause, [the court] ask[s] 'whether he or she is bound by that agreement under traditional principles of contract and agency law.'" *Id.* at 194–95 (quoting *Bel-Ray Co.*, 181 F.3d at 444). These principles may include "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver[,] and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). First, however, a court must look to state law to determine if the particular principle being argued is recognized and thereafter apply it to the parties dispute. *Id.* at 632; *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014).

Pennsylvania law allows nonsignatories to be bound to an arbitration agreement. *Griswold*, 762 F.3d at 271–72 (citing *Dodds v. Pulte Home Corp.*, 909 A.2d 348, 351 (Pa. Super. Ct. 2006)). Particularly, Pennsylvania recognizes the agency/principle theory of binding nonsignatories to an agreement. *Provensano v. Ohio Valley Generally Hosp.*, 121 A.3d 1085, 1097

23

(Pa. Super. Ct. 2015) ( "[I]f the principle is bound by an arbitration agreement, its agents, employees and representatives are generally likewise bound and can enforce the arbitration agreement, even as non-signatories to the agreement.") (collecting cases); *see also Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993) ("Where the parties to [an arbitration] clause unmistakably intend to arbitrate all controversies which might arise between them, their agreement should be applied to claims against agents or entities related to the signatories.").

The agency relationship may be created by estoppel, among other traditional ways of establishing the relationship. *See Walton v. Johnson*, 66 A.3d 782, 786, 788 (Pa. Super. Ct. 2013). The Third Circuit has also interpreted Pennsylvania law to allow nonsignatories to be bound by equitable estoppel, a separate but related concept to agency by estoppel. *See Griswold*, 762 F.3d at 271–73. In addition, a nonsignatory may be bound under the third-party beneficiary doctrine in Pennsylvania. *See Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1271 (Pa. Super. Ct. 2004).

Here, the defendants have not made clear how Genesis, a nonsignatory, may bind Glenwright, a signatory, to the arbitration agreement. The entirety of the defendants' argument is located in a footnote. (Doc. 27, at 8 n. 3). The footnote references the doctrines of agency and estoppel. However, later in their briefing, the defendants assert that they should be treated separately for purposes of administrative exhaustion. (*See* Doc. 12, at

24

14–15; *id.*). The defendants' argument for administrative exhaustion purposes is inconsistent with their argument that Genesis is Carbondale's "agent."

With respect to estoppel, the defendants cite to a non-precendential, state trial court decision applying the principle of equitable estoppel, specifically. (Doc. 27, at 8 n. 3 (citing *Barletto v. Heuschel*, 21 Pa. D. & C. 5th 376, 402–403 (Ct. Com. Pl. 2011))). It is not clear that equitable estoppel is applicable here. In the context of a nonsignatory attempting to bind a signatory to an arbitration agreement, equitable estoppel applies only where "the claims [against the nonsignatory] were intimately founded in and intertwined with the underlying contractual obligations" that contain the arbitration clause. *Griswold*, 762 F.3d at 272. The signatory cannot rely on contract obligations for their claims against the true signatory but then refuse to arbitrate against the nonsignatory based on those same claims. The Third Circuit has described this as the nonsignatory "voluntarily pierc[ing] its own veil" to compel arbitration. *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 201 (3d Cir. 2001). This principle is applied where there is some underlying agreement forming the basis of the plaintiff's claims. Glenwright's claims are not based on the agreement at issue, but are based on violations of federal and state statutory law. The defendants have not shown that equitable estoppel would be appropriate in this context.

More importantly, the parties have not clarified the exact relationship between Genesis and Carbondale. Glenwright describes Genesis as the

25

managing entity for Carbondale. (Doc. 16, ¶8). Genesis concedes this is true, though the defendants dispute whether Genesis was Glenwright's "employer." (*See* Doc. 13, ¶2; Doc. 24, ¶2). It appears from the record that Genesis and Carbondale are, in fact, separate entities. Carbondale and Genesis's subsidiary, an initial defendant in this action, filed a separate Rule 7.1 disclosure statement. (Doc. 5, Doc. 6). Carbondale has no parent corporation, though it is unclear if Genesis and Carbondale are affiliated entities in any way. (*See* Doc. 5). At this stage it is not clear if Genesis can be deemed an agent of Carbondale and, thus, may compel arbitration against Glenwright. It is not even clear if this is the defendants' argument.

The defendants have not shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" with respect to Genesis' ability to compel arbitration. FED. R. CIV. P. 56(a). Nor is the court persuaded that "no reasonable jury" could find that Glenwright did not agree to arbitrate with Genesis. *In re Bressman*, 327 F.3d at 238. The parties have not provided the court with enough facts to make this determination and the court is unable to rely on the parties' footnotes.[3] At this

---

[3] Arguments raised in passing that are not squarely argued are, typically, deemed waived. *See Johnson v. Metlife Bank, N.A.*, 883 F. Supp. 2d 542, 550 n.4 (E.D. Pa. 2012) (citing *John Wyeth & Brother, Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n. 6 (3d Cir. 1997)). In this instance, the parties have failed to properly address this issue and rely solely on sparse arguments in footnotes. This renders the court unable to "make an informed ruling" on the issue. *Id.*

stage, the court will deny the motion with respect to Genesis without prejudice and allow Genesis to file a renewed motion after the completion of fact discovery, if appropriate. At that time, hopefully, the court would be able to properly address the parties true arguments.

## V.    ADMINISTRATIVE EXHAUSTION

Next, the defendants argue that this court lacks jurisdiction over the ADA and PHRA claims against Genesis because Glenwright failed to name Genesis as a party in the underlying administrative proceedings before the EEOC and PHRC. Glenwright argues that Genesis did not need to be named because both entities represented to her that "for all intents and purposes, [they were] one entity." (Doc. 23, at 9). She also argues that they were "joint employers." (*Id.*). The court cannot determine at this stage whether the administrative charge naming Carbondale as respondent is sufficient with respect to Genesis because the parties have not clarified the relationship between Genesis and Carbondale. The defendants' motion will be denied without prejudice at this stage of the litigation.

A plaintiff alleging claims under the ADA and PHRA must exhaust his or her administrative remedies before filing a complaint in court. *Churchill v. Star Enters.*, 189 F.3d 184, 190 (3d Cir. 1999). Typically, the plaintiff may only bring suit against the named party in the administrative proceeding. *Schafer v. Bd. of Pub. Educ. Of Sch. Dist.*, 903 F.2d 243, 251 (3d Cir. 1990). An

exception exists, however, when the unnamed party received notice and has a "shared commonality of interest with the named party." *Id.* at 252 (citing *Glus v. G.C. Murphy Co.,* 629 F.2d 248, 251 (3d Cir. 1980), *vacated on other grounds by* 451 U.S. 935 (1981)).[4] The court must consider following four factors in making this determination:

1) Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;

2) Whether, under the circumstances, the interests of the named party are so similar to the unnamed party that for purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

3) Whether the unnamed party's absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and

4) Whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 252 n. 7. This is not a mechanical test and no one factor is dispositive. *Glus,* 629 F.2d at 251.

It is unclear at this stage what the relationship is between Carbondale and Genesis other than Genesis being a "managing entity." Glenwright has provided the court with various exhibits to show that Carbondale and Genesis

---

[4] This articulation has been described as "a shorthand version of the four-part test stated in *Glus.*" *Dixon v. Phila. Housing Auth.,* 43 F. Supp. 2d 543, 546 (E.D. Pa. 1999).

represented to her that "for all intents and purposes, [they were] one entity" but this alone is insufficient. (Doc. 23, at 9). Further, if Genesis is a party to the arbitration agreement, the exhaustion argument may become moot.

Glenwright's exhibits include the following:

1) An employee handbook provided to Glenwright that is labeled "Genesis Employee Handbook for Managed Centers," (Doc.24-1);

2) Paystubs listing "Genesis Healthcare" as the payor, (Doc. 24-2);

3) Performance appraisals labeled "Genesis Healthcare Corporation Non-Management Performance Appraisal," (Doc. 24-3);

4) A leave of absence form provided by "Genesis Healthcare," (Doc. 24-4); and

5) The position statement offered by Carbondale in the underlying EEOC proceeding whereby Carbondale stated that "Genesis Healthcare, the managing entity of [Carbondale], offered Nurse Glenwright a leave of absence so she could maintain employment," (Doc. 24-5, at 7).

Glenwright uses the above information to argue that there is sufficient commonality of interests between Carbondale and Genesis based on their representations to her. This is not enough to clarify the true relationship between Genesis and Carbondale and it is not enough for this court to decide the defendants' motion using the factors enumerated in *Schafer* and *Glus*.

The court cannot weigh the first factor at this stage. Glenwright's administrative charge does not mention Genesis, even in passing. Genesis' direct role in the firing is not clear from the charge alone. However, depending on the relationship between Genesis and Carbondale and each entities' role

with respect to employee matters, Genesis may have been able to easily ascertain it was included as a party in the administrative charge.

Similarly, the court cannot weigh the second factor at this stage. The claims against the parties are identical and their alleged role in the underlying events that took place are intertwined. However, at some point, in order to hold Genesis liable, a legal determination must be made that Genesis was either an agent of Carbondale, part of an integrated enterprise, or a joint employer.[5] Although Genesis did play a role in the underlying allegations as the managing entity for Carbondale, the court cannot state that the parties share a commonality of interest in this action until the exact relationship between the defendants is determined.

The third and fourth factors do weigh in favor of Glenwright at this stage. Genesis has not alleged any prejudice based on Glenwright's failure to name the entity in the administrative charge. In addition, based on her exhibits it appears that Glenwright viewed Carbondale and Genesis as one and the same. This conclusion may have been reasonable based on the representations made to her during her employment. Genesis was named as the entity on Glenwright's employee handbook; Genesis was named as the payor on her paystubs; and Genesis was named in her performance

---

[5] *See N.L.R.B. v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982) (distinguishing the "single employer" and "joint employer" concepts); *see also* 42 U.S.C. §12111(5)(A) (defining the term "employer" to include any "agent" of the employer).

30

appraisals. By listing itself as an entity on various employee documents, Genesis was representing to Glenwright that its relationship with her would be through Carbondale.  *Schafer*, 903 F.2d at 252 n. 7.

Although the third and fourth factor weigh in favor of Glenwright, the court finds it necessary to determine the exact relationship between the parties before making a finding on the defendants' administrative exhaustion argument. Clarity regarding the relationship of the parties would also resolve the pending arbitration issue with respect to Genesis and may make the administrative exhaustion argument moot. Though normally the jurisdictional determination is given initial consideration, a few courts have held that a valid arbitration agreement may waive the administrative exhaustion requirement. *See, e.g., Virk v. Maple-Gate Anesthesiologists, P.C.*, 80 F. Supp. 3d 469, 478–80 (W.D.N.Y. 2015), *affirmed and vacated in part by* 657 F. App'x 19 (2d Cir. 2016) (collecting and analyzing cases). This would be for an issue for the arbitrator to decide, but it would make the current jurisdictional issue moot. *Virk*, 657 F. App'x at 23. Accordingly, the defendants' motion to dismiss based on lack of subject-matter jurisdiction will be denied at this time to allow further factual development. The administrative exhaustion issue will be determined after the court's finding regarding Genesis' ability to compel arbitration as a nonsignatory to the arbitration agreement.


**VI.    CONCLUSION**

The defendants' motion, (Doc. 11), is **GRANTED IN PART** and **DENIED IN PART**. The defendants' motion is **GRANTED IN PART** with respect to Carbondale. The claims against Carbondale will not be dismissed. Instead, Glenwright will be compelled to arbitrate her claims against Carbondale. The court will sever the fee provisions in the parties' agreement as these provisions are unenforceable. The defendants' motion is **DENIED WITHOUT PREJUDICE** with respect to Genesis. Genesis may file a renewed motion, if appropriate and made in good faith, after the completion of fact discovery. A separate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: March 23, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-0926-01.wpd